These are appeals from a circuit court judgment in consolidated cases, denying fees to Maxwell L. Black as special administrator *Page 3 
of the estate of Carrie Gertrude Nass. The judgment was made and entered on appeal and cross appeal from the Wayne county probate court.
On November 15, 1928, Carrie Gertrude Nass, of the city of Detroit, died intestate and left a substantial estate consisting of real and personal property. At that time, apparently no known heirs existed, and Charles J. Weber was appointed special, as well as general, administrator by the probate court of Wayne county.
During the year 1931, while Weber was engaged in administering the estate, one Paul Nass, claiming to be the husband of the deceased, filed a petition in the Wayne county probate court for a determination of heirs and subsequently, on June 5, 1931, Judge Hulbert found that the claim of Nass was without merit and made a finding in connection therewith as follows:
"The court now finds that at the time of the death of said Carrie Gertrude Nass (nee Carr) she was unmarried and left neither father nor mother, brother or sister, or issue of brothers or sisters or any heir at law, and that the estate of which she died seized escheated to the State of Michigan."
In the early part of 1933, appellant, Maxwell L. Black, was appointed to the office of assistant attorney general and State public administrator, and in the course of his investigations discovered that the estate was still in the probate court and, on reviewing the finding of Judge Hulbert in the Nass claim, determined on certain proceedings on the assumption that the estate had escheated to the State. He accordingly filed a petition as public administrator for the State of Michigan, praying for the removal of Weber as administrator and the appointment of himself as a special administrator. This petition was granted, and on June 6, 1933, *Page 4 
Black was appointed to that office by the probate court.
Weber delivered the assets of the estate, which amounted to some $37,000, to Black, who, in turn, without obtaining any order to assign the property, delivered these assets, along with quitclaim deeds to certain real estate, to the State board of escheats.
At the time that Black took over the assets, Weber had fully and completely administered the estate and all claims had been paid with the exception of Weber's fees. In March, 1934, Judge Hulbert disallowed $10,546.57 which Weber claimed for rendition of extraordinary services as administrator, and from this order Weber appealed to the circuit court. With the exception of small rental collections, no further work seems to have been done by Black, during his tenure of office as public administrator.
In January, 1935, Black was replaced in the office of public administrator by Buell A. Doelle. At this time Weber's appeal was still pending, and it is Black's contention that Doelle asked Black to assist him in getting this matter settled. Doelle denies retaining Black in any capacity and testified that he regarded him as special administrator of the estate under the court order of June 6, 1933. It does appear, however, that the two did work together in settling the claim of Weber, and in May, 1936, Weber's claim on appeal was settled for $4,000, after the State board of escheats, upon the recommendation of Doelle, had released $10,000 in assets of the estate to Black in order "to facilitate the immediate closing of this estate." Black paid Weber $4,000 and claims the remainder of the $10,000 transferred to him by the board as fees for services rendered in connection with the Weber claim.
In 1935, Joseph Manderano filed a petition for determination of heirs in the estate with the Wayne *Page 5 
county probate court, but this petition was denied. Manderano then filed a petition for administration de bonis non, but this petition was likewise dismissed. From these orders of dismissal, Manderano appealed to the circuit court, and on appeal Judge Moll found that Carrie G. Nass had been survived by Carrie Hall, a maternal aunt who died at Lowell, Massachusetts, on February 27, 1931, and ordered the probate court to appoint Manderano as administrator de bonis non, as he was ancillary administrator of the Hall estate. This order was complied with in March, 1938, and Manderano was appointed administrator. Following the appointment, the remaining assets of the estate held by the board of escheats were transferred to Manderano, and are now in his possession.
Meanwhile, in June, 1937, the probate court ordered Black to file a final account as special administrator. This Black did, listing, among other disbursements, the sum of $6,000 for "special administrator's ordinary and extraordinary fees" and added that this sum had been paid to him by the board of escheats. The court found this fee to be exorbitant and allowed Black a fee of $1,500 and surcharged him with the sum of $4,500.
Shortly thereafter, Black petitioned the probate court for a rehearing of his final account upon the ground that inasmuch as the estate had escheated, the board had authority to pay his compensation in the amount of $6,000 for services rendered. This petition was denied, and Black appealed to the circuit court.
Meanwhile, Manderano obtained special leave to appeal the order of the probate court granting Black $1,500 in fees on the ground that Black should have been charged with waste in failing to pay taxes and collecting rentals from certain property belonging *Page 6 
to the estate which Black had neglected to do. To this appeal, Black filed a cross appeal, contending that the probate court had no jurisdiction to determine fees as the estate had escheated and that Manderano was unlawfully acting as administrator de bonis non; and that, if he was subject to the jurisdiction of the court, the allowance of $1,500 for administrator's fee was insufficient.
Both cases were heard together before Judge Moll, who determined that the estate never legally escheated to the State of Michigan; that the board merely held the assets as custodian for Black, who was legally responsible to the court for the entire amount which he had turned over to the board. The trial court further found that Black was entitled to no fees as special administrator, especially in view of the fact that Black's position was anomalous in that during the trial he claimed that he did not act as special administrator after leaving public office but rather as an attorney for the board, while his pleadings were founded on the theory that he was entitled to fees as special administrator from 1935 until the filing of his final account. The court also found that Black "took no pains * * * to see to it in any capacity that the estate was properly administered or conserved," but refused to surcharge him for waste as prayed for by Manderano in his appeal. A judgment was accordingly entered surcharging Black in the sum of $6,000, which was the amount he claimed for his services.
From this judgment Black has taken an appeal, and Manderano has cross-appealed. The claims of the parties are substantially the same as those presented by them in appealing from probate court to the circuit court. Black contends that the estate is an escheated one by virtue of Judge Hulbert's finding; that, therefore, the probate court has no *Page 7 
jurisdiction and he need not account to it; that Manderano is not a proper party plaintiff; and that, if Black is under the jurisdiction of the court, the lower court erred in setting aside the $1,500 fee allowed to him by the probate court. Manderano contends that Black should be surcharged for waste in failing to collect rentals and manage the real estate.
The board of escheats only receives an estate when residue is assigned to the State as an escheated estate. In 3 Comp. Laws 1929, § 15617 (Stat. Ann. § 27.2747), it is provided:
"Whenever any estate has been fully and completely administered by the probate court having jurisdiction thereof, and the residue of the estate shall have been assigned to the people of the State of Michigan as an escheated estate, the public administrator shall turn over to the State board of escheats all property effects and credits which shall be so assigned by order of the court, together with a certified copy of his final amount and the order of the court assigning the residue, and such other papers as may be required, and shall receive from said board receipts therefor, in duplicate, one to be filed with the court in the cause and the other to be preserved by him. No public administrator shall directly or indirectly, in any manner whatsoever, acquire any interest in, or bargain for, any benefits from any of the property that may come into his control or possession as such administrator."
When Black became administrator, he failed to comply with the law governing escheated estates in any particular whatever. He transferred all the assets of the estate forthwith to the board of escheats without any order of the probate court. In his office as public administrator, he had no authority to do this. As to the estate and the probate *Page 8 
court, he was only the administrator of the estate under the jurisdiction of the said court, to the same extent, with the same powers, and subject to the same provisions of law, as any other administrator of an estate. When Black turned this entire estate over to the board of escheats, there were claims still outstanding. There was the claim of Weber for services already rendered. Whatever fee Black himself was entitled to as administrator was a claim against the estate. And before the estate could be turned over to the board, it was necessary to secure the authority of the probate court to pay such claims, and then transfer the estate by an order of the probate court, assigning residue. If this had been done, neither Weber nor Black would have had any claim against the estate or the board of escheats after assignment of residue, because the only way they could have such claims allowed was in probate before such assignment. The board, therefore, received all the cash and real estate without any right thereto according to law. Thereafter, on Black's request, the board transferred $10,000 back to him to settle the Weber claim and to facilitate the closing of the estate. Afterward, the board was obliged to turn the balance of the property back to Manderano as administrator. In this whole proceeding the board had no right to pay Black out of the estate for any services that he performed, and it is to be remarked that there is no evidence that it was ever agreed by the board to pay Black anything for any services he claimed to have performed. He merely kept the $6,000, out of the $10,000 transferred to him by the board, after the settlement of the Weber claim for $4,000.
The claim of Black for $6,000 is so indistinguishably jumbled in the probate account that it is difficult to ascertain whether he is claiming the allowance *Page 9 
from the probate court, or that payment thereof was made to him by the board of escheats in payment of services rendered to the board. The entry in the account, which Black asked to have allowed as a final account in probate, under the heading of "Disbursements," reads: "Special administrator's ordinary and extraordinary fees . . . $6,000 (This sum was paid by board of escheats)." As said before, the board had no power to pay this sum to Black out of an estate which it received by mistake and inadvertence, and which it has now restored to the present administrator in probate, with the exception of the sum advanced to Black.
There is no sufficient evidence upon which to justify an allowance to Black for services as special administrator. In his testimony on the claim, he states that his positionafter January, 1935, was as an agent and attorney for the boardof escheats. But his claim as special administrator was for general care, supervision, administration, and preservation of the estate after January 5, 1935. He claims the fee was paid by the board of escheats and, at the same time, asks for the allowance of said fee by the court. He must stand on one ground or another. Either he is claiming the amount as a fee from the board, or from the estate in probate. If from the board, it had no power to pay the fee out of the estate and denies having done so. If the claim is against the estate, there is no proof of the value of his services.
We find no justification for allowing a surcharge against Black for failing to collect rentals. For a considerable period, the real estate was in the hands of the board of escheats and, although such holding during that time was in violation of law, everyone who had been concerned with the handling of the estate up to that time erroneously assumed it to be *Page 10 
proper. Black's claim for fees was properly a claim to be filed against the estate and, inasmuch as he failed to submit proof to justify its allowance, or any part thereof, we concur with the judgment of the trial court that the claim should be disallowed, and that his account should be surcharged the sum of $6,000 in accordance with the foregoing opinion.
Other questions raised are not of sufficient merit to require discussion, or are necessarily disposed of by our determination.
Judgment affirmed, with costs to the estate.
SHARPE, C.J., and BUSHNELL, BOYLES, CHANDLER, NORTH, WIEST, and BUTZEL, JJ., concurred.